

# Office of the Attorney General
## State of Texas

DAN MORALES
ATTORNEY GENERAL

December 7, 1992

Honorable Gonzalo Barrientos
Chairman
Committee on Nominations
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. DM-185

Re: Whether a municipality may establish a program for economic development pursuant to section 380.001 of the Local Government Code, and related questions (RQ-464)

Dear Senator Barrientos:

You have asked several questions about the constitutionality and proper construction of section 380.001 of the Local Government Code. Specifically, you ask the following:

1. Is the establishment of a program for economic development by a municipality pursuant to Section 380.001 of the Local Government Code constitutional?

2. Do each of the incentives outlined [in your letter], when used singularly or in combination, constitute a "program ... to promote state or local economic development" as that phrase is used in Section 380.001 of the Local Government Code?

3. Can a municipality issue bonds to fund incentives which are included in a program for economic development established under Section 380.001 of the Local Government Code?

4. Are there any constitutional or statutory prohibitions or preemptions that would preclude inclusion of any of the incentives outlined [in your letter] in a program for economic development established under Section 380.001 of the Local Government Code?

The legislature enacted section 380.001 of the Local Government Code after 1987, when voters approved adding article III, section 52-a to the Texas Constitution. Section 52-a provides as follows:

> Notwithstanding any other provision of this constitution, the legislature may provide for the creation of programs and the making of loans and grants of public money, other than money otherwise dedicated by this constitution to use for a different purpose, for the public purposes of development and diversification of the economy of the state, the elimination of unemployment or underemployment in the state, the stimulation of agricultural innovation, the fostering of the growth of enterprises based on agriculture, or the development or expansion of transportation or commerce in the state. Any bonds or other obligations of a county, municipality, or other political subdivision of the state that are issued for the purpose of making loans or grants in connection with a program authorized by the legislature under this section and that are payable from ad valorem taxes must be approved by a vote of the majority of the registered voters of the county, municipality, or political subdivision voting on the issue. An enabling law enacted by the legislature in anticipation of the adoption of this amendment is not void because of its anticipatory character.

One might argue that section 52-a authorizes the legislature to create state-wide economic development programs, but it does not authorize the legislature to delegate such responsibilities to counties, municipalities, or other political subdivisions. Admittedly, the first sentence is ambiguous on this point. Reading the section as a whole, however, section 52-a clearly envisions that a county, municipality, or other political subdivision may issue bonds to pay for its economic development program. Legislative history and this office's prior interpretation of section 52-a supports this construction of the section.

In hearings on the resolution proposing to place this constitutional amendment before the voters, a witness speaking before the House Committee on Science and Technology explained the proposed amendment as one that does not authorize, without further constitutional amendment, the state to issue general obligation bonds for the purpose of encouraging economic development in the state. Hearings on H.J.R. 5 Before the House Committee on Science and Technology,

70th Leg. (Mar. 3, 1987) (statement of Jerry Turner) (copy on file with House Committee Coordinator). Rather, according to the witness, this amendment would authorize the legislature, if it chose to do so, to enact legislation that would empower local governments to issue bonds, provided that the people voting in the affected taxing jurisdiction approved the issuance of such bonds at an election. *Id.* Significantly, according to another witness, this amendment to the constitution authorizes a local government to provide any kind of assistance for the purposes listed in the amendment, but only if the legislature has enacted enabling legislation permitting the kind of program the local government seeks to establish, and, if the local government seeks to use any tax funds, a majority of the voters voting at a referendum on the issue have approved. *Id.* (testimony by Robert Randolph, member of Speaker's Economic Development Committee) (copy on file with House Committee Coordinator).

This office examined article III, section 52-a in Attorney General Opinion JM-1227 (1990) in reference to a project the City of Marlin proposed, in which the City of Marlin contractually would agree with the Texas Department of Commerce to take responsibility for the creation of jobs by a private entity. Attorney General Opinion JM-1227 at 1. If the private entity failed or failed to provide the jobs it represented it would provide in its application for a loan from the Department of Commerce, the City of Marlin would reimburse the Department of Commerce a *pro rata* portion of the department's loan to the private entity. *Id.* This office stated that the legislature and the voters intended section 52-a to create exceptions to pre-existing constitutional prohibitions on the lending of public credit.[1] *See id.* at 3 (and sources cited therein); *see also* Texas Const. art. III, §§ 51, 52. We advised, however, that article III, section 52-a does not by itself expand a municipality's authority to lend credit, but it authorizes the legislature to enact laws that do so. Attorney General Opinion JM-1227 at 3. Thus, the legislature must enact enabling legislation

---

[1]In Attorney General Opinion JM-1255 (1990), this office stated that article III, section 52-a of the Texas Constitution expands the constitutional definition of public purpose to include economic development and diversification, elimination of unemployment and underemployment, stimulation and growth of agriculture, and the expansion of state transportation and commerce. Attorney General Opinion JM-1255 at 8. However, neither the language of section 52-a nor of any relevant commentary suggests that the voters and legislature, by enacting section 52-a, "intended to change the requirements that public resources and powers be used for 'the direct accomplishment of a public purpose' and that transactions using such resources and powers contain sufficient controls 'to insure that the public purpose be carried out.'" *Id.* at 8-9 (and sources cited therein).

to authorize the proposed transaction between the department of commerce and the City of Marlin. *Id.*

Section 380.001 of the Local Government Code provides as follows:

> (a) The governing body of a municipality may establish and provide for the administration of one or more programs, including programs for making loans and grants of public money and providing personnel and services of the municipality, to promote state or local economic development and to stimulate business and commercial activity in the municipality.

> (b) The governing body may:

> > (1) administer a program by the use of municipal personnel;

> > (2) contract with the federal government, the state, a political subdivision of the state, a nonprofit organization, or any other entity for the administration of a program; and

> > (3) accept contributions, gifts, or other resources to develop and administer a program.

The author of House Bill 3192, which proposed section 380.001 of the Local Government Code, stated before the House Committee on Urban Affairs that this enactment would be the enabling legislation for article III, section 52-a.[2] Hearings

---

[2]Representative McCollough, the author of House Bill 3192, testified before the House Committee on Urban Affairs that section 380.001 of the Local Government Code, if enacted, would authorize a municipality to do the same thing that the legislature had just authorized counties to do, *i.e.*, to participate in economic development matters. Hearings on H.B. 3192 Before the House Committee on Urban Affairs, 71st Leg. (May 15, 1989) (testimony of Representative McCollough, author) (copy on file with House Committee Coordinator). Representative McCollough did not cite a particular act or code section; however, we believe he was referring to section 381.004 of the Local Government Code, which the legislature added to the Local Government Code by Acts 1989, 71st Leg., ch. 1060, § 3, at 4307. Section 381.004(b) authorizes the commissioners court of a county to stimulate business and commercial activity in the county by developing and administering a program for state or local economic development; for small or disadvantaged business development; to stimulate, encourage, and develop business location and commercial activity in the county; or to improve the extent to which women and minority businesses are awarded county contracts. Subsection (c)(3), (4) explicitly authorizes a county commissioners court to use county employees or funds for the program,

on H.B. 3192 Before the House Committee on Urban Affairs, 71st Leg. (May 15, 1989) (testimony of Representative McCollough, author) (copy on file with House Committee Coordinator). By enacting section 380.001, the legislature evidently intended to authorize municipalities to perform any of the functions that article III, section 52-a permitted the legislature to delegate. In our opinion, section 380.001 of the Local Government Code properly implements article III, section 52-a; thus, in answer to your first question, we believe that section 380.001 of the Local Government Code is constitutional.[3]

Your second question asks us to delineate the kind of incentives that a municipality properly may include in a "program ... to promote state or local economic development." The legislature did not expressly instruct what such a program would be. In testimony before the Senate Committee on Intergovernmental Relations, the author of Senate Bill 1820, a companion bill to House Bill 3192, stated that the bill would authorize cities to establish loan programs and to use municipal personnel for the purpose of attracting new businesses to the area and assisting existing businesses to expand. Hearings on S.B. 1820 Before the Senate Committee on Intergovernmental Relations, 71st Leg. (May 18, 1989) (testimony of Senator Carriker, author) (copy on file with Senate Staff Services); *see also id.* (testimony of Bob Hart, City Manager for City of Georgetown) (indicating Georgetown's interest in establishing direct lending program). It is outside the scope of the opinion process, however, to determine specifically which incentives, when offered singularly or in combination, constitute a "program ... to promote state or local economic development."

You next ask whether a municipality may issue bonds to fund incentives that it desires to include in a "program ... to promote state or local economic development" that the municipality has established under section 380.001 of the

---

(footnote continued)

and to accept contributions, gifts, or other resources to develop and administer the program. We found no cases or attorney general opinions interpreting section 381.004.

[3]We believe, however, that a municipality that institutes a program to promote state or local economic development pursuant to section 380.001 of the Local Government Code must comply with other constitutional requirements. *See supra* note 1. Specifically, the municipality must determine that it is using public funds and resources for the direct accomplishment of a public purpose and that transactions using the public funds and resources contain sufficient controls to ensure that the public purpose is carried out.

Local Government Code. Significantly, section 380.001 does not explicitly provide that a municipality may finance such a program through bond revenues. However, the municipality about which you specifically inquire is a home-rule municipality. A home-rule municipality has "[t]he power to issue bonds upon the credit of the city for ... public purposes in the amount and to the extent provided by such charter, and consistent with the Constitution of this State; provided, that said bonds shall have first been authorized by a majority vote by the duly qualified property tax-paying voters voting at an election held for that purpose." V.T.C.S. art. 1175. Therefore, if the proposed bond issuance is in accordance with the home-rule municipality's charter, and if a majority of the duly qualified property tax-paying voters voting at an election held to consider the bond issue have approved the issuance, the municipality may issue bonds to fund an economic development program established under section 380.001. *But see supra* note 3.

Finally, you ask whether any constitutional or statutory prohibitions or preemptions would preclude inclusion of any particular incentive in a program for economic development that a municipality establishes pursuant to section 380.001 of the Local Government Code. The legislature intended article III, section 52-a of the Texas Constitution and section 380.001 of the Local Government Code to authorize municipalities to implement a range of programs designed to promote economic development. Again, it is outside the scope of the opinion process to determine whether any set of incentives, offered singularly or in combination, can constitute an economic development program under section 380.001. However, we are unaware of, and you have not specifically mentioned, any provisions that would forbid a municipality from establishing a program to promote state or local economic development and to stimulate business and commercial activity in the municipality.

## S U M M A R Y

Section 380.001 of the Local Government Code, which the legislature enacted pursuant to article III, section 52-a of the Texas Constitution, is constitutional. The legislature intended section 380.001 to authorize municipalities to offer a range of incentives designed to promote state or local economic development. It is outside the scope of the opinion process to determine, however, whether a particular incentive or combination of incentives constitutes a "program ... to promote

state or local economic development" for purposes of section 380.001 of the Local Government Code.

A home-rule municipality may issue bonds to fund an economic development program that the municipality has established in accordance with section 380.001, but only if two conditions are met. First, the bonds the municipality desires to issue must be in an amount and to the extent provided by the municipality's charter. Second, a majority of the duly qualified property tax-paying voters voting at an election held to consider the bond issue must have approved the issuance.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General